**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CAPITAL HILL DEVELOPMENT, LLC, | |
| *Plaintiff,* | |
| v. | Civil Action No. 1:24-cv-3353 (CJN) |
| COHN, GOLDBERG, & DEUTSCH, LLC, et al., | |
| *Defendants.* | |

**MEMORANDUM OPINION**

Capital Hill Development, LLC, a real estate holdings company, intended to place a bid at the foreclosure sale of a residential property that was subject to a defaulted-on mortgage loan from the U.S. Department of Housing and Urban Development. But when Capital Hill Development arrived at the auction, it was not permitted to bid because its certified check—although conforming to the format that the HUD-appointed foreclosure commissioner had allegedly supplied that morning—did not in fact comply with HUD's regulations. Capital Hill Development subsequently sued both the foreclosure commissioner and the auctioneer in D.C. Superior Court on tort claims brought under District of Columbia law. The foreclosure commissioner removed the case here and moved to dismiss, while Capital Hill Development moved to remand. For the reasons below, the Court will deny the motion to remand and grant the motion to dismiss.

I.    **Background**

A.    **Factual Background**

The Secretary of Housing and Urban Development possesses statutory authority to "designate a person . . . to serve as a foreclosure commissioner . . . for the purpose of foreclosing

upon a single family mortgage" on HUD's behalf.  12 U.S.C. § 3754(a).  Once designated, "[a] foreclosure commissioner . . . shall have a nonjudicial power of sale" as to the property in question. *Id.* § 3754(b).

In July 2024, the Secretary designated Defendant Cohn, Goldberg, & Deutsch, LLC (CGD), a Maryland-incorporated law firm, as the foreclosure commissioner for a HUD-loan-encumbered property located at 206 10th St. NE, Washington, D.C.  ECF No. 2-2 (Compl.) ¶¶ 3, 5; ECF No. 2 (NOR) ¶ 2; ECF No. 2-1.  CGD's appointment letter (which was sent by a HUD contractor) informed it that the "Single Family foreclosure[]" in question was "to be handled pursuant to Section 805 of the Single Family Mortgage Foreclosure Act of 1994, 12 U.S.C. § 3751, *et seq.*"  ECF No. 2-1 at 1.  Among other relevant documents, such as the loan papers and deed form, the appointment letter enclosed a list of instructions and a "Foreclosure Check Sheet (Form HUD-92218)."  *Id.*

The foreclosure sale was scheduled for October 18, 2024, at 11:00 a.m., with Defendant Tidewater Auctions, LLC, a Maryland-incorporated firm, acting as the auctioneer.  Compl. ¶¶ 2, 5, 8.  Before the sale began, CGD and Tidewater "engaged in [a] process to qualify bidders, which entailed verifying that all potential bidders had certified funds, via check, in the correct amount and issued to the correct party."  *Id.* ¶ 6.  Plaintiff Capital Hill Development, LLC, a real estate holdings company incorporated in the District of Columbia, was among that group of potential bidders.  *Id.* ¶¶ 1, 7.

Capital Hill Development alleges that, in anticipation of the qualification process, it contacted a CGD representative just after 9:00 a.m. on the morning of the sale to inquire "how to make its check payable to participate in the auction."  *Id.* ¶¶ 10, 28.  The representative allegedly responded that Capital Hill Development would need to bring "certified funds payable to [its]

LLC." *Id.* ¶ 9.  Capital Hill Development claims that it "relied on this information and proceeded to obtain a cashier's check for the deposit amount of $45,000.00 made payable to [it]self." *Id.* ¶ 11.

When the Tidewater auctioneer "view[ed] [Capital Hill Development's] certified funds," however, the auctioneer determined that Capital Hill Development was *not* a qualified bidder "because [its] certified check had to [be] made payable to HUD, not [its] LLC." *Id.* ¶ 8.  Capital Hill Development "asked [] Tidewater if it could endorse the cashier's check to HUD," but Tidewater "refused to accept a check endorsed to HUD from [Capital Hill Development]"—as opposed to from the bank directly.  *Id.* ¶¶ 13–14.  The result was that only one bidder was eligible to participate in the auction, and the property was ultimately sold to that bidder for approximately $436,000.00.[1] *Id.* ¶ 15.

Capital Hill Development alleges that price to be "very low" compared to the fair market value of the property, which it estimates at $1.2M. *Id.* ¶¶ 15–16.  Capital Hill Development further alleges that it was "prepared to nearly double that price" in order to "secure the property in its portfolio." *Id.* ¶ 17.

## B.    Procedural History

Soon after the sale, Capital Hill Development sued both CGD and Tidewater in D.C. Superior Court.  *See* Compl. at 1, 4–8.  Capital Hill Development alleged that CGD had committed negligent and fraudulent misrepresentation (Counts 2 and 3), as well as breached its fiduciary duty

---

[1] The "approximately $436,000.00" figure is taken from Capital Hill Development's complaint.  CGD's briefs, by contrast, state the sales price as $465,500.00.  *See* ECF No. 4 at 2; ECF No. 12 at 2.  For present purposes, the Court assumes as true the facts alleged in the complaint. But it would resolve the pending motions in the same way regardless of which number is correct.

as a "trustee of the sale" (Count 1), by misinforming Capital Hill Development about how to make payment at the auction and thereby causing it to "los[e] out on purchasing the property." *Id.* ¶¶ 21–23, 28–32, 37–40.  Capital Hill Development further alleged that Tidewater had breached its fiduciary duty to "conduct the auction in a manner consistent with good faith and fair dealing" (Count 4) when it refused to "make allowances for [Capital Hill Development] to endorse [its] check to HUD for the purpose of participating in the auction." *Id.* ¶¶ 43, 45.  As relief, Capital Hill Development sought a declaratory judgment (Count 5) and an order setting aside the sale and requiring the property to be re-auctioned, in addition to punitive damages and fees.  *Id.* at 8.  To date, neither HUD nor the auction winner have intervened in the suit or been joined as parties.

CGD timely filed a notice of removal, citing 28 U.S.C. § 1441(a).  NOR ¶¶ 5, 7; *see also* 28 U.S.C. § 1446(b)(1) (generally requiring notices of removal to be filed within thirty days of the defendant's receipt of the initial pleading).  In particular, CGD contended that its "actions in this matter were undertaken pursuant to a federal statute, 12 U.S.C. § 3751, *et seq.*"—the Single Family Mortgage Foreclosure Act of 1994—"and thus this matter arises under the laws of the United States."  NOR ¶ 6.  Tidewater did not join in the notice of removal, and CGD stated that it has "no information indicating whether or not [Tidewater] has been served process in the removed case."[2] *Id.* ¶ 8.

After the case was docketed here, CGD moved to dismiss.  *See* ECF No. 4 (MTD).  Capital Hill Development opposed that motion, *see* ECF No. 9 (MTD Opp.), and moved to remand.  *See* ECF No. 6 (MTR).

---

[2] CGD also stated that it did not itself "admit to proper service of process."  NOR ¶ 5 n.2.

## II.    Motion to Remand

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)). Two cases fall into that category:  those implicating "diversity jurisdiction" and those implicating "federal-question jurisdiction." *See id.* As discussed, CGD's notice of removal argued that the Court could have exercised original jurisdiction over this case because it "arises under the laws of the United States," as contemplated by the federal-question jurisdiction statute, 28 U.S.C. § 1331. NOR ¶ 7. And in its brief opposing remand, CGD argued that this case is also removable under the diversity jurisdiction statute, 28 U.S.C. § 1332(a). *See* ECF No. 12 (MTR Opp.) at 5. As the removing party, CGD bears the burden of demonstrating that one of those statutes applies and confers jurisdiction in this case. *See Steele v. Salb*, 681 F. Supp. 2d 34, 36 (D.D.C. 2010).

The Court will analyze both potential bases for removal below. Before doing so, however, it will attend briefly to a threshold issue that neither party raised. "[W]here there is more than one defendant [in an action], it is well established that removal generally requires unanimity among the defendants." *Williams v. Howard Univ.*, 984 F. Supp. 27, 29 (D.D.C. 1997) (quotation marks omitted); *see also* 28 U.S.C. § 1446(b)(2)(A). "Unless all defendants express such consent to removal in a timely manner, the removal procedure is defective." *Williams*, 984 F. Supp. at 29. Nonetheless, "[a] defect in the removal procedure does not deprive the Court of subject matter jurisdiction, and a[ny] motion to remand for defective procedure must be made within 30 days after the filing of the Notice of Removal." *Id.* at 29–30 (citations omitted); *see also* 28 U.S.C. § 1447(c).

Here, although both CGD and Tidewater are defendants in this matter, Tidewater has not made any submission that could be construed as an "independent and unambiguous consent to removal." *Williams*, 984 F. Supp. at 30. It did not sign the notice of removal, and indeed, has not even entered an appearance. On the other hand, though, Capital Hill Development's motion to remand makes no mention of defendants' failure to "express their unanimous consent to removal," *id.* at 29, and the time to make such an objection has now lapsed. *See* 28 U.S.C. § 1447(c). The Court therefore will not entertain this possible procedural flaw as a reason to remand, and need not consider whether one of the exceptions to the general unanimity rule applies here—such as one that exempts from the consent requirement a defendant that "has not been served with the initial pleading at the time the removal petition was filed." *Busby v. Cap. One, N.A.*, 932 F. Supp. 2d 114, 127 (D.D.C. 2013) (listing "[t]hree well-established exceptions" to the "rule of unanimity"); *see also Williams*, 984 F. Supp. at 30 (remanding for lack of unanimity specifically "where there ha[d] been a timely motion to remand under 28 U.S.C. § 1447(c) for defective removal procedure").

With this initial matter settled, the Court turns next to subject matter jurisdiction. It begins with diversity jurisdiction—the later-asserted basis for removal on which CGD finds stronger footing.

### A.    Diversity Jurisdiction

Federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). This case appears to be one "between . . . citizens of different States." *Id.* The complaint alleges that Capital Hill Development is incorporated in the District of Columbia, whereas CGD (like Tidewater) is incorporated in

Maryland.[3]  Compl. ¶¶ 1–3; *see In re Lorazepam & Clorazepate Antitrust Litig.*, 900 F. Supp. 2d 8, 18 (D.D.C. 2012) ("For diversity jurisdiction purposes, corporations are citizens of the state or states in which they are incorporated and the state of its principal place of business.").  And although the papers do not expressly address where the parties' have their principal places of business, Capital Hill Development explicitly "does not dispute that the parties live in different states."[4]  ECF No. 15 (MTR Reply) at 2.

Instead, Capital Hill Development argues that the amount-in-controversy requirement is not met, because it "is not asking the court for monetary damages" equal to either the amount of the winning bid on the property ($436,000) or the fair market value of the property ($1.2M).  *Id.*; Compl. ¶¶ 15–16.  It is rather "seeking declaratory and injunctive relief," in the form of an order directing defendants to "set aside the sale . . . for 206 10th Street, NE and re-advertise [it] for sale."  MTR Reply at 3.  Accordingly, Capital Hill Development argues, "there is a 'legal certainty' that [its] claim amounts to less than $75,000."  *Id.* at 2 (quoting *Bronner v. Duggan*, 962 F.3d 596, 605 (D.C. Cir. 2020)).

But diversity jurisdiction is of course not limited to suits for damages.  To the contrary, "[w]hen [declaratory or] injunctive relief is sought, the amount-in-controversy may be measured by (1) the value of the right that the plaintiffs seek to enforce; or (2) the cost to the defendants to remedy the alleged denial of that right."  *Bronner v. Duggan*, 364 F. Supp. 3d 9, 22 (D.D.C. 2019),

---

[3] For purposes of removal, "[t]he term 'State' includes the District of Columbia."  28 U.S.C. § 1451(2).

[4] In theory, Capital Hill Development could have argued that either CGD or Tidewater has its principal place of business in the District of Columbia, thereby making one or the other a citizen of the District and precluding removal on this basis.  *See* 28 U.S.C. § 1441(b)(2); *see also* Compl. ¶¶ 2–3 (alleging that CGD "attorneys handle matters in the District of Columbia" and that Tidewater is "licensed to do business in the District of Columbia").  But Capital Hill Development did not do so—and, as noted, did not make any allegations at all about either defendant's "principal" place of business—so the Court will not explore this possible nuance.

*aff'd*, 962 F.3d 596 (D.C. Cir. 2020).  Here, even assuming that the cost to defendants of setting aside the sale and re-auctioning the property would not exceed $75,000, *see* MTR Reply at 3, the complaint plainly alleges that the value of those events to Capital Hill Development (or, put differently, the value it lost by not being able to participate in the auction) is far more than the jurisdictional amount.  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.").  After all, Capital Hill Development attests that it was prepared to pay double the winning bid for the property—i.e., $872,000.  Compl. ¶¶ 15, 17.  It follows that the opportunity to place a bid is worth at least that much, and perhaps even as much as $1.2M—what it asserts is the "fair market value" of the property.  *Id.* ¶ 16; *see also, e.g.*, *Info. Strategies, Inc. v. Dumosch*, 13 F. Supp. 3d 135, 143 (D.D.C. 2014) (analyzing value of trade secrets in order to assess value of injunction that would prevent their disclosure).  There is thus at minimum a "present probability" that the value of the "right sought to be protected meet[s] the statutory requirement," *Gomez v. Wilson*, 477 F.2d 411, 421 n.51 (D.C. Cir. 1973), and so the Court concludes that it possesses diversity jurisdiction over this case (and thus that removal was proper).

### B.    Federal-Question Jurisdiction

Federal courts also have original jurisdiction over cases "arising under the . . . laws . . . of the United States."  28 U.S.C. § 1331.  "The 'vast majority' of the cases that arise under federal law are those where the cause of action is actually created by federal law."  *Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294, 298 (D.D.C. 2005) (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).  This case surely does not belong to that predominating set, because Capital Hill Development asserts only common law tort claims under District of Columbia law.  *See* Compl at 4–8.

There is, however, "a special and small category of cases in which arising under jurisdiction still lies," "even where a claim finds its origins in state rather than federal law." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quotation marks omitted).  That is so when a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.*  But the Supreme Court has construed this category narrowly, declining to find its so-called "*Grable* exception" satisfied where the federal issue lacks "significan[ce] to the federal system as a whole," *id.* at 264, or is otherwise "fact-bound and situation-specific."  *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).  And lower courts have followed suit, confining the category "to those rare state-law claims posing a context-free inquiry into the meaning of federal law."  *Flavell v. Int'l Bank for Reconstruction & Dev.*, 2021 WL 1146301, at *7 (D.D.C. 2021).

Capital Hill Development has not brought those rare claims here.  To start, it is not imminently clear whether any federal question is "necessary to" or "actually disputed" in this case. *Gunn*, 568 U.S. at 259.  CGD argues that whether it breached a fiduciary duty or made a materially false statement will turn on "whether it followed the rules and regulations outlined by the [Single Family Mortgage Foreclosure Act of 1994, 12 U.S.C. § 3751, *et seq.*]," which outlines the "terms" of any HUD foreclosure sale.  MTR Opp. at 4–5.  But that assertion is difficult to assess:  CGD does not specifically reference any of those terms, and the sole statutory provision to which it cites contains only the findings and purpose of the Foreclosure Act.  *See id.*; 12 U.S.C. § 3751. Moreover, CGD appears to admit that either the Act or its implementing regulations require prospective purchasers to proffer checks made out to HUD in order to qualify for the auction—the single fact Capital Hill Development alleges CGD misrepresented.  *See* MTD at 2, 7; MTR Opp.

at 3 ("Due to Plaintiff's non-compliance with the HUD regulations, Plaintiff was prevented from bidding at the foreclosure sale."). It thus is not clear—at least without further explanation from CGD—what daylight exists between the parties on this purported federal interpretive "issue." *Cf. Gunn*, 568 U.S. at 259.

CGD fares no better in arguing that whether it owed Capital Hill Development a fiduciary duty in the first place "explicitly turn[s] on" the Foreclosure Act. MTR Opp. at 5. Again, CGD offers little explanation on this point, beyond simply stating that its work entailed "acting as an agent of HUD under federal law."[5] *Id.* And CGD overlooks that District of Columbia law provides its own guidance about when a fiduciary relationship has been created. *See, e.g.*, *Paul v. Jud. Watch, Inc.*, 543 F. Supp. 2d 1, 6 (D.D.C. 2008). It simply is not discernible from CGD's brief how federal law would necessarily resolve or even bear on this element of Capital Hill Development's claim.

But even assuming the vague "federal issues" CGD flags are necessary and disputed, they are "not substantial in the relevant sense" because they are of limited "importance . . . to the federal system as a whole." *Gunn*, 568 U.S. at 260. At most, this case presents a question about what steps federal law requires of foreclosure commissioners conducting non-judicial foreclosures. Even if the case indeed presents that question, it does so in a manner that is unduly "fact-bound

---

[5] CGD makes a few statements in its brief, this one included, that could be construed as invoking the federal officer removal statute—a separate removal hook that government contractors may utilize in certain circumstances. *See Kormendi/Gardner Partners v. Surplus Acquisition Venture, LLC*, 606 F. Supp. 2d 114, 119 (D.D.C. 2009) (describing the "three-part showing" required for a contractor to effect removal under that statute) (citing 28 U.S.C. § 1442(a)(1)); *see also* MTR Opp. at 4 ("[W]hen executing the non-judicial foreclosure sale, CGD was effectively acting as HUD."). But it is the contractor's burden to show that the elements required for federal officer removal are met, *see Kormendi/Gardner*, 606 F. Supp. 2d at 119, and CGD's passing references to its claimed status as an agent of HUD (unaccompanied by any citation to the statute itself) do not accomplish that.

and situation-specific." *Empire*, 547 U.S. at 701.  After all, the crux of the controversy here appears to be about whether CGD's statements *in a single conversation* were consistent with federal requirements (and relatedly, with CGD's written statements in a similar time frame).  *See* Compl. ¶¶ 12, 18, 38.  That is far from the kind of "pure issue of law" the Supreme Court has deemed substantial enough to warrant federal jurisdiction under *Grable*.  *Empire*, 547 U.S. at 700.  There is no indication, for instance, that resolution of this narrow question could "thereafter . . . govern numerous [HUD-foreclosure] cases."[6]    *Id.* at 687–88, 700 (reimbursement suit by federally-contracted health insurer was not susceptible to federal jurisdiction where the "bottom-line practical issue [wa]s the share of [a] settlement properly payable to [the insurer]").

CGD emphasizes that the relief Capital Hill Development seeks in this case is the "set aside" of a "federal foreclosure sale," MTR Opp. at 4, suggesting that the federal government has a "direct interest in the availability of a federal forum to vindicate its own administrative action." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).  But there is no question here of the government's *authority* to foreclose; there is only a question as to whether its contractor, CGD, followed proper procedures when assisting with the foreclosure.  *Cf. id.* at 311, 315–16 (exercising jurisdiction over quiet title suit where plaintiff alleged that the purchaser's "record title was invalid because the IRS had failed to notify [plaintiff] of its seizure of the property in the exact manner required by [federal law]").  CGD cites no authority for the proposition that,

---

[6] CGD's notice of removal and brief opposing remand can also be read as suggesting that removal is appropriate because compliance with federal law insulates CGD (and foreclosure commissioners generally) from state tort liability for actions taken in the course of conducting a non-judicial foreclosure.  *See* NOR ¶ 6; MTR Opp. at 4.  But that argument is "properly understood as an assertion of a federal preemption defense, which cannot serve as the basis for federal subject-matter jurisdiction."  *D.C. v. Elevate Credit, Inc.*, 554 F. Supp. 3d 125, 145–46 (D.D.C. 2021) (declining to exercise jurisdiction on the basis of defendant's argument that "federal regulation[s] permit[ted] the conduct that the District allege[d] [the defendant] undertook in violation of the District's laws.").

where a case turns essentially on factual questions, a plaintiff's requested remedy alone can confer federal jurisdiction. *See, e.g.*, *D.C. v. Elevate Credit, Inc.*, 554 F. Supp. 3d 125, 146 (D.D.C. 2021) (declining to exercise jurisdiction over District of Columbia consumer law claims alleged to implicate FDIC regulations where, like here, the "main issue" was a "substantially factual" question as to "the identity of the true lender of [certain] loans"). For all of these reasons, and considering its obligation to construe removal jurisdiction "strictly," *Flavell*, 2021 WL 1146301, at *3, the Court will not assert federal-question jurisdiction over Capital Hill Development's state law claims.

***

As set forth above, the Court has diversity jurisdiction but not federal-question jurisdiction over this case. But one form of jurisdiction is enough, and so the Court will deny the motion to remand.

## III.    Motion to Dismiss

CGD makes two overarching arguments in support of dismissal: (1) that Capital Hill Development lacks Article III standing to bring any of its claims, and (2) that, in any event, Capital Hill Development has not adequately pleaded the elements of those claims. *See* MTD at 4–8. The Court concludes that, while Capital Hill Development does have standing to sue, it presently fails to state any claim for relief.

### A.    Standing

There are three elements of constitutional standing. "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable

to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks, alterations, ellipses, and citations omitted). Each of these elements is present here.[7]

According to CGD's framing of Capital Hill Development's complaint, "the only 'injury' alleged to have been suffered by Plaintiff is that [it] w[as] prevented from bidding at the foreclosure sale and thus 'lost out on purchasing the property.'" MTD at 4 (quoting Compl. ¶ 23). That asserted injury is "mere[ly] speculati[ve]," CGD argues, because there was another bidder present at the sale and so Capital Hill Development may not have been able to buy the property regardless. *Id.* But CGD overlooks the antecedent harm that Capital Hill Development alleges: the fact that it was not able to bid at all. Compl. ¶ 12. It is well-established that "the denial of a business opportunity satisfies the injury requirement," even if it is not certain that the plaintiff would ultimately have "succe[eded] in seeking to exploit that opportunity." *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 42 (D.C. Cir. 1999).

---

[7] There is tension (at least) between CGD's decision to remove this case and its argument that Capital Hill Development lacks Article III standing, because it is the burden of the removing party to establish that the Court has subject-matter jurisdiction over the complaint and "Article III standing is a part of subject-matter jurisdiction." *Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 817–18 (E.D. Pa. 2025) (discussing this tension). But federal courts also are bound to "exercise the jurisdiction that is conferred upon them by Congress," and have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not." *Hartig Drug Co. Inc. v. Senju Pharma. Co.*, 836 F.3d 261, 267 (3d Cir. 2016). Especially where Capital Hill Development does not concede that it lacks standing—as some litigants do under similar circumstances—the Court finds it appropriate to "engage in an independent analysis to determine if [it] has Article III standing to litigate [its] claim in federal court, where it now resides." *Johnson v. Patenaude & Felix, A.P.C.*, 2021 WL 3260064, at *3 (M.D. Pa. 2021); *see also Zanotti v. Invention Submission Corp.*, 2020 WL 2857304, at *8 (S.D.N.Y. June 2, 2020) (conducting an "independent review" of standing where the party seeking remand did not "concede[] that jurisdiction did not exist").

CGD next argues that Capital Hill Development's inability to bid is not "fairly traceable" to CGD, because it was Tidewater, not CGD, that finally "refused to accept a check endorsed to HUD from Plaintiff" and disqualified Capital Hill Development from the auction.  MTD at 5 (quoting Compl. ¶ 14).  Taking Capital Hill Development's allegations as true, though, the only reason Tidewater did not accept the check was that it conformed to the incorrect format that CGD supplied.  *See* Compl. ¶¶ 11, 14.  That kind of "but-for" causal link satisfies the traceability requirement, even if CGD's actions were not the "sole cause" of Capital Hill Development's injury. *Mennonite Church USA v. U.S. Dep't of Homeland Sec.*, 2025 WL 1094223, at *5 (D.D.C. 2025).

Finally, CGD contends that Capital Hill Development's alleged injury is unlikely to be redressed by a decision in its favor because, "[a]s a bona fide purchaser for value without notice of any defects, the purchaser's interest in this matter outweighs any possible interest that Plaintiff may have."  MTD at 5.  Although CGD does little to explain this point, the Court understands CGD to be suggesting that Capital Hill Development specifically lacks standing to pursue the set aside of the foreclosure sale because, where the purchaser allegedly has already recorded the deed to the foreclosed-upon property, the Court either cannot or likely would not issue such drastic relief.  *See id.* & n.1.

It is true that "standing is not dispensed in gross," and so "a plaintiff must demonstrate standing for each . . . form of relief that is sought."  *MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, 728 F. Supp. 3d 89, 99 (D.D.C. 2024).  Yet, CGD's argument regarding the redressability-potential of the set aside remedy incorrectly conflates standing with the merits.  *See Est. of Boyland v. U.S. Dep't of Agric.*, 913 F.3d 117, 123 (D.C. Cir. 2019).  CGD is not suggesting (nor, logically, could it suggest) that the act of re-auctioning the property, if ordered by the Court, would not cure

14

Capital Hill Development's asserted injury of having been unable to bid at the first auction. Nor, as far as the Court can tell, is CGD suggesting that the Court categorically lacks power to order that remedy. *Cf. Seed v. Env't Prot. Agency*, 100 F.4th 257, 264 (D.C. Cir. 2024) (plaintiff lacked standing where the compensatory damages she sought were unavailable as a matter of law); *see, e.g.*, *Movahedi v. U.S. Bank, N.A.*, 853 F. Supp. 2d 19, 24–27 (D.D.C. 2012) (listing possible reasons for setting aside a foreclosure sale). CGD appears instead to simply be arguing that it would be inappropriate as a matter of equity for the Court to order that relief in this particular case. But that is a merits question that has no bearing on Capital Hill Development's threshold entitlement to sue. [8]

### B.    Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted). The Court concludes that Capital Hill Development has not met

---

[8] In addition to challenging Capital Hill Development's constitutional standing in the ways discussed above, CGD gestures at a "prudential" standing argument in asserting that "Plaintiff further lacks standing to raise the issue of whether or not the foreclosure sale produced a reasonable price or whether it 'sold for an unconscionably low price.'" MTD at 5 (quoting Compl. ¶ 24); *id.* at 3. The Court agrees that Capital Hill Development would be improperly "raising another person's" (HUD's or the mortgagor's) rights if its claim of harm indeed centered on the ultimate sale price of the property. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). Any such claim might also run into difficulty under the statutory presumption of fairness in the Single Family Mortgage Foreclosure Act of 1994. *See* 12 U.S.C. § 3760(e). But again, the Court understands Capital Hill Development to be seeking redress specifically for the injury of having been excluded from the bidding process, and to have mentioned the sale price to add color to that theory.

that standard as to any of its claims.  It will, however, permit Capital Hill Development to replead some in an amended complaint.

At the outset, though, the Court addresses one argument that CGD makes as to all of Capital Hill Development's claims.  CGD points out that 12 U.S.C. § 3760, the provision of the Single Family Mortgage Foreclosure Act of 1994 which sets out the duties of foreclosure commissioners, provides that "[a]ny foreclosure sale held in accordance with this chapter shall be conclusively presumed to have been conducted in a legal, fair and reasonable manner."  MTD at 4 (quoting 12 U.S.C. § 3760(e)).  CGD asserts that all of Capital Hill Development's claims must be "viewed through the lens" of this presumption—but does not explain whether that would mean subjecting them to some kind of heightened pleading standard, or something else.  *Id.*  Regardless, the statute says only that a HUD "foreclosure *sale*" should be presumed fair, 12 U.S.C. § 3760(e), and here Capital Hill Development's claims concern only events that transpired before the actual sale.  *See* Compl. at 4–8.  The Court thus will decline CGD's invitation to factor 12 U.S.C. § 3760(e) into its analysis of the complaint.

### 1.    Breach of Fiduciary Duty

To plead a claim for breach of fiduciary duty under District of Columbia law, Capital Hill Development "must allege facts sufficient to show that (1) [CGD] owed [Capital Hill Development] a fiduciary duty; (2) [CGD] breached that duty; and (3) the breach proximately caused an injury." *333 8th St. NE, LLC v. Turnkey Title, LLC*, 2024 WL 4625638, at *2 (D.D.C. 2024).  CGD argues that Capital Hill Development's breach of fiduciary duty claim founders on the first element because Capital Hill Development "fails to identify any [] authority to support the proposition th[at] CGD owed [it] a fiduciary duty as a prospective bidder at the foreclosure sale."  MTD at 6.  The Court agrees.

Certain relationships, such as those between doctor and patient, agent and principal, and trustee and beneficiary, "automatically trigger fiduciary duties." *Krukas v. AARP, Inc.*, 458 F. Supp. 3d 1, 7 (D.D.C. 2020). Capital Hill Development seeks to slot its relationship with CGD into something resembling the "agency relationship" category. MTD Opp. at 3. It begins from the premises that CGD was "acting as an agent to HUD" in its capacity as a foreclosure commissioner; that HUD, according to Chapter 4 of the HUD Handbook, "exercises fiduciary responsibility toward the taxpayer"; and that the managing member of Capital Hill Development "is a taxpayer in the District of Columbia" who "sought to purchase a property that was originally purchased using a HUD product." *Id.* at 2–3. Capital Hill Development argues that putting these pieces together reveals that CGD—as an agent of HUD—owed it a fiduciary duty vis-à-vis the foreclosure sale. *Id.* at 3.

That conception of fiduciary duty is far too broad to be tenable. To start, the provision of the HUD Handbook to which Capital Hill Development cites is extremely general: it describes HUD's "mission" to "help provide and preserve an adequate supply of affordable housing" by "minimizing losses in the multifamily insured loan and property disposition programs, [] maximizing collections, [] enforcing statutes and regulations, and [] allocating, administering and monitoring subsidy-based programs in a cost-effective manner." HUD Handbook 4350.4, Section 4-1. That kind of programmatic language does not create a relationship between HUD and the American taxpayers that is somehow akin to the relationship between a trustee and his beneficiary.

More importantly, though, Capital Hill Development is mistaken in suggesting that, whenever an agency relationship is formed, the agent necessarily acquires the fiduciary duties held by its principal. To be sure, an agent owes a fiduciary duty *to* its principal, and must "act with [its]

17

interests in mind." *High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1568 (D.D.C. 1987).  But that does not as a matter of course entail the agent's *stepping into* the principal's shoes—just the same as, when a doctor hires a lawyer, the lawyer does not suddenly enter a fiduciary relationship with that doctor's patients.  Nonetheless, that is the far-reaching import of Capital Hill Development's argument.

Capital Hill Development's theory of fiduciary duty also runs into an additional roadblock. As CGD points out, foreclosure commissioners are required by statute to "conduct [] foreclosure sale[s] in accordance with the provisions of [the Single Family Mortgage Foreclosure Act of 1994] and in a manner fair to both the mortgagor and the [HUD] Secretary." 12 U.S.C. § 3760(b)(1)(A). And under District of Columbia law, the general rule in the analogous real estate context is that "broker[s] must act for the exclusive benefit of the principal and for that principal only."  *Urb. Invs., Inc. v. Branham*, 464 A.2d 93, 97 (D.C. 1983).  Capital Hill Development has not alleged any facts to suggest the existence of a "special confidential relationship" between itself and CGD that could overcome the basic principle that "a broker [] may not serve both parties to a transaction"—here, HUD and the mortgagor on one side, and prospective buyers like Capital Hill Development on the other.  *Id.* at 96.

In sum, Capital Hill Development has not demonstrated that its relationship with CGD is one that would traditionally give rise to a fiduciary duty—and indeed, it is one that traditionally does *not* do so.  *See id.*  Nor, as just mentioned, has Capital Hill Development pleaded any facts to show that, under the circumstances, "the parties extended their relationship beyond the limits of contractual obligations or ordinary business relations to a relationship founded upon trust and confidence." *Krukas*, 458 F. Supp. 3d at 8 (quotation marks omitted).  At bottom, Capital Hill Development's interactions with CGD—which seemingly consisted of a single phone call—were

"simply too fleeting and too superficial to give rise to a fiduciary duty." *Steele v. Isikoff*, 130 F. Supp. 2d 23, 37 (D.D.C. 2000) (dismissing breach of fiduciary claim brought by source against reporter where "their contact was limited to several short telephone calls and one face-to-face meeting"). Because the parties' relationship "lacks the traditional earmarks of a fiduciary relationship," *Hopper v. Fin. Mgmt. Sys., Inc.*, 1997 WL 31101, at *6 (D.D.C. 1997), and because the Court sees no indication that additional facts could put those earmarks in place, the Court will dismiss this claim with prejudice.

### 2. Fraudulent Misrepresentation

"To successfully assert a claim for fraudulent misrepresentation . . . under District of Columbia law, a plaintiff must prove (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken [by the plaintiff] . . . in reliance upon the representation, (6) which consequently resulted in provable damages." *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 195 (D.D.C. 2016) (quotation marks omitted). Importantly, "Federal Rule of Civil Procedure 9(b) requires a claim of fraudulent misrepresentation to be pled with particularity," which means that a plaintiff must state "the time, place, and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud, as well as the individuals allegedly involved in the fraud." *Id.*

Capital Hill Development's fraudulent misrepresentation claim is inadequate as currently pleaded, for several reasons. To start, Capital Hill Development's complaint does not "state with particularity the circumstances [allegedly] constituting fraud." Fed. R. Civ. P. 9(b). Although Capital Hill Development alleges that it "specifically request[ed] [that CGD explain] how to make its check payable to participate in the auction," and that CGD "told [Capital Hill Development] to

make the check payable to itself," Capital Hill Development does not describe in any detail how it framed its question or how CGD framed its response. Compl. ¶¶ 10, 28, 30. Indeed, while the complaint implies that the conversation occurred over a phone call, it never actually says so explicitly. Nor does Capital Hill Development offer the identity of its managing member—the individual whom it claims reached out to CGD—or even attempt to identify the CGD representative with whom its managing member allegedly spoke. *Id.* ¶¶ 9–13. These omissions presently prevent CGD from formulating an adequate response to the complaint. *See, e.g.*, *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 46 (D.D.C. 2018) (dismissing fraudulent misrepresentation claim where plaintiffs did not "identify one specific official" who made the misrepresentations in question).

Capital Hill Development also fails to plausibly allege that CGD acted with an "intent to deceive." *Jacobson*, 168 F. Supp. 3d at 195. There is no requirement that intent be pleaded with specificity, *see* Fed. R. Civ. P. 9(b), but here Capital Hill Development's complaint contains *no* facts to indicate that CGD had the requisite degree of scienter. *See* Compl. ¶¶ 35–40. Capital Hill Development's conclusory assertion in its opposition brief that CGD "knowingly gave [it] the wrong terms such that [it] could not bid" is plainly insufficient. MTD Opp. at 6; *see Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Still, despite all these flaws, it is not clear to the Court that Capital Hill Development could *never* plead it adequately. And "[o]rdinarily, when a court grants dismissal under Rule 9(b), it provides the claimant leave to amend the pleading to achieve the particularity required by Rule 9(b) and in accordance with Rule 15(a)." *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 255

(D.D.C. 2004).  The Court will therefore dismiss this claim without prejudice and permit Capital

Hill Development to file an amended complaint.

### 3.    Negligent Misrepresentation

"Under District of Columbia law, the elements of a negligent misrepresentation claim are

the same as those of a fraudulent misrepresentation claim, except a negligent misrepresentation

claim does not include the state of mind requirements of fraud"—i.e., the defendant's knowledge

of falsity and intent to deceive.  *Jacobson*, 168 F. Supp. 3d at 206 (quotation marks omitted).

"And, like claims for fraudulent misrepresentation, Rule 9(b)'s particularity requirements apply to

claims for negligent misrepresentation."  *Id.*  Thus, while Capital Hill Development's negligent

misrepresentation claim does not suffer from a failure to adequately allege scienter, it does suffer

from all the other infirmities described above:  namely, the omission of specific details regarding

the circumstances of CGD's supposed misrepresentation and the identities of the parties involved.

CGD also argues for dismissal of this claim on the basis that it was unreasonable for Capital

Hill Development to rely on a contrary oral statement by CGD where "the foreclosure sale

advertisement contained the specific requirement that prospective bidders must bring checks

payable to the HUD Secretary."  MTD at 7.  It is true that courts have held reasonable reliance to

be an element of negligent misrepresentation claims, and that they have specifically found reliance

to be unreasonable where "the misrepresentations in question were oral statements that

contradicted written contracts between the parties."  *Burlington Ins. Co. v. Okie Dokie, Inc.*, 329

F. Supp. 2d 45, 49 (D.D.C. 2004).  But here, of course, there was no *contract*—written or

otherwise—between the parties, and the Court is not prepared to endorse at the pleading stage

CGD's argument that a plaintiff acts per se unreasonably in crediting an oral representation about

sale terms over a written *advertisement* as to those terms.  *See id.* (explaining that the relevant

inquiry is whether "the plaintiff should have known that the defendant's representations were untrue").

The Court will therefore dismiss this claim only on the basis that Capital Hill Development failed to meet the Rule 9(b) pleading standard, and not on the basis that its reliance on CGD's alleged statement was unreasonable as a matter of law.  For the same reasons discussed above with respect to the fraudulent misrepresentation claim, the dismissal shall be without prejudice.

### 4.    Declaratory Judgment

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Here, in addition to its request for damages and the set aside of the foreclosure sale, Capital Hill Development seeks a declaratory judgment that CGD breached a fiduciary duty and engaged in fraudulent and negligent misrepresentation.  Compl. ¶ 48.  CGD argues that, even setting aside Capital Hill Development's failure to plead the elements of those underlying claims, there is no basis for the Court to issue a declaratory judgment because "Plaintiff is now aware of the requirement that deposit checks in HUD non-judicial foreclosures be drafted specifically in favor of the HUD Secretary" and thus "there is little chance that this issue would arise prospectively."  MTD at 8.

Because Capital Hill Development presently has not adequately alleged the claims which "wholly subsume[]" its declaratory judgment claim, the Court must dismiss the latter along with all of the former.  *Walpin v. Corp. for Nat. & Cmty. Serv.*, 718 F. Supp. 2d 18, 24 (D.D.C. 2010), *aff'd*, 630 F.3d 184 (D.C. Cir. 2011).  But in any event, "[a] declaratory judgment always rests within the sound discretion of the court," and should be awarded (or not) consistent with factors

like "whether [it] w[ould] serve a useful purpose in clarifying the legal relations at issue" and "whether it would finally settle the controversy between the parties." *Harris v. Bessent*, 2025 WL 679303, at *8 (D.D.C. 2025). Here, even if Capital Hill Development could plausibly plead and later prove that CGD's statements were unlawful, it is not clear how a declaratory judgment would serve any useful purpose in this case. There is no "ongoing uncertainty" about the parties' relationship—as CGD notes, the substantive question of what kind of checks the HUD regulations require appears undisputed—and the events at issue are hardly matters of "significant public importance." *Id.* (quotation marks omitted). The Court will therefore dismiss this claim with prejudice.

## IV.    Conclusion

For the reasons above, the Court will deny Capital Hill Development's motion to remand and grant CGD's motion to dismiss. Capital Hill Development's breach of fiduciary duty and declaratory relief claims shall be dismissed with prejudice, and its fraudulent and negligent misrepresentation claims shall be dismissed without prejudice. An Order will accompany this Opinion.

DATE:  June 11, 2025

_____
CARL J. NICHOLS
United States District Judge

23